Good morning. May it please the court, my name is Ashley Gamborian and I represent Mr. Igor Popov in his petition for review. We have two issues today, this morning, that we would like to ask the court to consider. The first one is the timeliness of Mr. Popov's motion to reopen, and the second one is the BIA's refusal to reopen the case based on sua sponte. So when the first issue is the timeliness, we would like to ask the court to consider the vacature of his convictions that were the basis of his removal proceedings that vitiated the entire removal order. Basically, the basis for the order would trigger the diligence at that point. What do we do about the fact that the statute that authorized the motion to seek that vacature was in 2017, but no actions were taken, I believe, until the first actions taken in 2020, and the agency held that against him? Yes, your honor. First of all, Mr. Popov was not in the United States. He had been removed all before even the enactment. During the entire relevant time period, he's in Russia? Yes. Is he still in Russia? He is now in detention, actually, in immigration detention, because he returned and applied for asylum in 2024, November of 2024. So, well, under the bent case. Are there ongoing proceedings with respect to him arising from that? Is there another notice to appear and another immigration proceeding that's on its way? Yes, your honor. His asylum claim was denied, and he's appealing that decision. So there's a pending, another petition in this, is it in this court or another circuit? At the BIA. Oh, it's at the BIA level still. Okay. The judge found him credible, but denied his case for other reasons. Okay. Counsel, in 2020, when he contacted a lawyer, was he aware of the 2017 statute then? No, your honor. I'm the one who informed him about it. Okay. So why shouldn't that time be counted against him? Since he didn't know about the statute in 2017, and he didn't know about it in 2020, this is a blind contact to an attorney. And he could have contacted the attorney in 2019, 2018, 2017, all the way back to 2015, which would have preceded the California statute. He didn't take any efforts to contact an attorney to see if there was any avenue by which he could return to the United States. As stated in his declaration, your honor, he was in a very bad situation. He had just been deported. He was taking care of his- Why does that toll the statute? Why does that toll the time? Because the bent case says that we have to look at each case on its own merits. And if a reasonable person under his circumstances would have been that way, he would have done exactly what he had done. Is the California statute, California's codification of the Supreme Court's decision in Padilla v. Kentucky? I'm sorry, your honor. Is California's statute, California's codification of a principle raised by the Supreme Court in Padilla v. Kentucky? I'm not understanding. Well, the Padilla case is decided in 2010 by the Supreme Court, which suggests that the failure of a criminal defense attorney to advise his client of the conduct of the immigration consequences may be an effective assistance of counsel. That's right. Is that the basis for California's enactment of the statute in 2017? Partially, yes. Okay. The Padilla case was decided well before he was sent out of the United States. So he could have raised it at the time that he was sent out. But there was no avenue to do it until 1473. Yes, there was. There was a Supreme Court case in Padilla v. Kentucky. But 1473.7 was enacted. There wasn't a statute, but there was a Supreme Court case that said that he might have been able to take measures directly against his attorney. But he didn't have an attorney. He was in process. He represented himself in removal proceedings. He had no idea that there was an issue about ineffective assistance of counsel or any other issue for his conviction that he could have actually even gone that way, even considered vacating his conviction. But isn't the basis for the request to the California State Court is that he wasn't properly informed of the immigration consequences of his NOLO pleas. But when he was issued a notice to appear back many years earlier, wouldn't he have at that point been put on notice that there may be some issues with the criminal conviction and what it means for him from his ability to remain in this country? Yes, but in immigration court, they're not supposed to re-litigate the conviction. So once you're convicted, you're convicted, and the judge takes that as a conviction. And the removal order is based on that. And the notice to appear is based on that. He had no idea that he could have actually challenged that conviction. He was acting pro se. He didn't have money to get an attorney. He was detained. But one thing we might consider underbent is just was there even diligence at that earlier stage to do something, to try to do something. And the premise of his actions in the California State Court is that he was surprised effectively by the immigration consequences of his plea. And you might think that if that was true later, it would have been true earlier. But the Bent case said that in Bent, they measured the time from the date 1473.7 was enacted. And even then they said, we have to look at each case on the reasonable person standard. So where did the agency err here and not considering his personal circumstances? What personal circumstances do you think the agency failed to take into account? The agency didn't take into account his own dire situation. They held him to a higher standard, maximum feasible diligence, where the judge said that he should have done this. He should have acted pro se. He should have gotten pro bono attorney. He should have contacted an attorney. Those are all speculation and requiring a person in his circumstances to act more diligently than you would require a reasonable person to act in his situation. Well, the fact that when his conviction was vitiated, then it was vacated. It was done for constitutional rights violations. So once that's done, then the immigration judge should have just reopened the case and restored his lawful permanent resident status. I think the timeliness should be from that time because once he gets it, he gets vacated. Because before that, he couldn't have filed the motion to reopen to begin with. And when we filed the motion to reopen, while the case was pending, a Bent case came in and the judge made a decision. Yes, he mentioned the Bent case, but he brushed it off and then he required maximum feasible diligence. So we filed a motion to reconsider his decision so that bringing up the fact that he erred in his decision and he should have done that. He should have considered the timeliness from the date that it was vacated. And then I would like to reserve two more minutes for my rebuttal, Your Honor. All right. Thank you, counsel. All right. We will hear now from Mr. Pennington. Thank you, Judge Collins. And good morning. Greg Pennington for the government. What Mr. Popov wants is the court to decide that the agency must reopen a proceeding anytime a movement files a motion to reopen within 90 days of a vacator of a conviction. That's unsupported by this court's precedent and contrary to longstanding finality principles and the agency's discretion over motions to reopen. I'll start with this court's precedent. Perez Camacho, which lays out the four ways someone with a vacated conviction can go to the agency to see what can be done. One is through a timely motion to reopen. That clearly wasn't the case here. It was 10 years late. Two, through a reinstatement order. They have not reinstated Popov's original order of removal. He is in current 240 proceedings with a pending appeal before the board. Three, to show equitable tolling. Or four, sua sponte, which this court lacks jurisdiction to consider. So the only avenue we have is equitable tolling under Perez Camacho. And then we turn to Bent and the court's recent decision in Eskillion. Where does the diligence start? It starts with issuance of the notice to appear or once a movement knows that they're placed in removal proceedings as Eskillion's case was. And so the notice to appear was issued in 2015. And then the agency found reasonably within its discretion that there simply wasn't enough evidence to show what he did during those nine years. Well, let's start with the first two. From 2015 to 2017, before the California statute went into effect, what do you think he was supposed to do then? Well, as Judge Bybee mentioned, Padilla v. Kentucky was the law of the land. Even if he was pro se, he could have reached out to pro bono attorneys. The agency didn't rely on that theory, did it? That's correct. So we can't consider that under Chenery, right? That's correct. They didn't explicitly cite that, but I think that- He relied on the statute and took the statute and said that he wasn't diligent after the date of the statute. They didn't say he should have brought the substance of the statutory argument before 2017. I think that's correct. I think the immigration judge first said he did nothing from 2015 to 2017, specifically noting that despite the removal order by the immigration judge in his reservation of the right to appeal that to the board, he did not file an appeal and he spent three more months in the United States before he was removed. So the immigration judge considered that, that he still had time and did not exercise his rights to appeal to the board, the conviction, or do anything else. But then the immigration judge did the backfall of the 2017 statute. And I tried to take the court back to the motion to reopen, which never even mentioned equitable tolling. Mr. Popov argued in the motion to reopen that he had an absolute right to reopen based on the vacated conviction alone, only in a single paragraph at the end of the motion did he say he was diligent. Again, without mentioning equitable tolling. The agency decided the equitable tolling issue, so it's fully there and for our review. It is in the motion to reopen, but as I argued in the brief, that's not properly before the court. The motion to reconsider the denial of the motion to reopen is, and then that confines the court to reviewing. So did he have to take a separate appeal from the, from the, from the denial of the motion to reopen? Correct. He would have had to they don't merge. If he files a motion for reconsideration, if you file a PF, you lose here and you file a PFR. Do you have to take a separate appeal from the first judgment and then a denial from the, from the PFR? That's correct. That's what the Supreme Court said in stone that when Congress enacted 1252B6, the consolidation provision, they're envisioning separate petitions from each agency decision. And the statute provides. There's a stone-like rule applied to the BIA. I mean, because I, as I understood your argument, you were saying you didn't appeal the underlying ruling to the BIA and just appeal the reconsideration to the BIA, or do I have that wrong? That's correct. He only filed the motion to reconsider with the immigration judge. Once you appeal to the board, then jurisdiction for any further motions remains with the board. Does the board's jurisprudence show that it follows the stone rule that you need to, or does it follow the rule that we would follow versus district court, which is it all merges? I am unaware of that specifically. I just don't know. I do know that the board in this case said it's limited review over the immigration judge's decision was over the motion to reconsider. They say that at the beginning when laying out the standards for reconsideration and in a footnote saying all references are to the immigration judge's denial of the motion to reconsider. Does this materially affect our decision in the sense that the review of both would appear to be abuse of discretion? It doesn't affect the standard of review, but it limits the court's review only to the reason stated in the motion to reconsider. You know, counsel, on page two of the BIA's decision in the second full paragraph, I see where they, I know what you're referring to, but the board also says after taking into consideration the arguments made on appeal and conducting a thorough review of the record, we affirm the immigration judge's conclusion that the respondent did not show his personal circumstances warranted equitable tolling. It looks like that's on the merits. I think that's in light of the arguments made in the motion to reconsider. There were two arguments made in the motion to reconsider. One, that the immigration judge improperly applied bent, and two, that the immigration judge did not consider whether the vacator was an extraordinary circumstance on its own to warrant reopening. So I do understand that to say that the personal circumstances were considered, but only to the extent that the motion to reconsider argued that it wasn't through the motion to reconsider citation of the bent decision as the error of law. Because it, and it's, I would also say it's also a little, a little ambiguous in the opening paragraph of the BIA's decision, because it recites that he is appealing from the decision denying his motion to reconsider the immigration judge's decision in which the immigration denied the respondent's motion to reopen his proceedings. It does feel like, you know, we're going to address all of this. It all merges together. It's the same, it's the same arguments. I don't, I don't see why, why we're drawing these kinds of technical distinctions. If we don't want to get into the weeds on that, it's our position that we clearly win on the merits of the motion to reopen as well. As explained, the avenues for challenging. Urging, claiming that he has to file a first notice of appeal and then, and then file a second notice of appeal from, I mean, that's not the way that we handle things in the district court. It's not the way that you respond to proceedings in this court. Your time for, your time for cert is told if you file a PFR. It's not if you file a but it is if you file a motion for, for PFR, for panel, for panel rehearing. That's the ordinary way we conduct things. So, I mean, this is, I'm a little surprised that the government taking this position here. Well, I mean, I would, if the court's that interested, I would love the opportunity to put that in writing because I just don't know the BIA's practice. I know that it would require a separate notice of appeal, the filing fee for the appeal of the denial of the motion to reopen. And I'm pretty sure on the notice of appeal form for the board that there are boxes to check whether this is an appeal from a direct order of removal or a motion to reopen or a motion to reconsider. So I think they treat them differently. Going to the underlying merits, you know, the petitioner filed the 20HA letter with the Eskillion case and the Eskillion case suggests that just looking at the number of years since the 2017 statute went into effect without considering the individual circumstances about what happened during that period would be error. And yet looking at the IJ's decision, the IJ seemed to rely just on the length of time and didn't really consider that. I don't see the consideration of the circumstances. Well, the, the judge did cite his affidavit submitted with the motion to reopen. It, the judge recognized his arguments that he was destitute and didn't have anything until 2020. I know, but it says, given the plain language of this statute, the court fails to see how respondents' absence contributed to the lengthy delay in seeking a vacature under this provision, particularly given that good cause for his absence clearly existed. It seems close to a per se rule, doesn't it? Where are we talking about in the judge's decision? I'm on page 67 of the record in the IJ's decision of August 27th. Oh, so he's talking about the California statute.  So I think that was the response to his argument that it took so many years after the statute until he sought the vacator. So he didn't file the motion for a vacator until April of 2024, I think the record reflects, in the state court judge's order. So the seven years, he didn't show how his absence from the country contributed it because the statute itself allows for the movement to not be there in person. So I think the judge was just looking at all the factors. I thought I read this part of the decision to be referring to the period after he's retained a lawyer and the judge is assessing whether there was any additional delay in that period and seemed to think maybe there was because these lengthy negotiations with the city attorney's office may not have been necessary. Right, because the statute didn't require any of that. That's just the judge, in our view, considering all the factors that Mr. Popov claims he ignored. I see my time's up. We would argue that there was no abuse of discretion and ask the court to deny the petition for review. Right. Thank you, counsel. We'll hear rebuttal now. Thank you. First of all, I want to mention that under CFR, the code, the 8 CFR 1003.23, once you file a notice of appeal of a decision, the jurisdiction vests with the BIA and the judge cannot reconsider the motion to reopen anymore. So you cannot file two appeals at the same time. And also, I wanted to... So what does that mean? If you can't file two appeals at the same time, that you... Then you have to file a motion to reconsider or you choose to file a motion to appeal the motion to reopen. Okay. And then if you file the motion to reconsider and then file an appeal, does that limit the BIA to reconsidering the motion to reconsider? Of course not, Your Honor. The BIA has to decide the motion to reopen in order to decide if the judge erred in any way to... In his motion to reconsider. So these are the same... It's the same issue, the same... BIA have a rule similar to what we have in our rules that if you file a motion to reconsider, it tolls the time to appeal to the BIA on the underlying order. The BIA, once BIA assumes jurisdiction, the judge can no longer make any decisions on any case, on any motion to reopen motion or even on a merits case, on a case. I know, but it could, you know, you could theoretically have a situation where you either go to the BIA or you seek motion for reconsideration and you can only go up on the motion for reconsideration. Is there any provision of the BIA rules that says that it tolls the time to seek an appeal of the underlying order while you're seeking reconsideration? We have an explicit rule to that effect in our rules. No, I'm not aware of such a rule. And also, I wanted to mention under Sua's bondage jurisdiction for this court to review, the BIA itself in its decision said that they admitted that it was an extra, the vacature of the convictions was an extraordinary circumstance, situation, warranting reopening. However, they said that, oh, at the time that he was ordered deported, he was convicted, so properly convicted. So that was the whole point of our argument that he was not properly convicted. That's why the conviction was vacated. Okay. All right. Thank you, counsel. The case just argued will be submitted. As far as, oh, can I make one more? No, the case is submitted. Thank you.
judges: BYBEE, COLLINS, BRESS